IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM N. LEDFORD,

Plaintiff,

v.

DR. LAURA C. SUKOWATY and ALANA M. ACKER,

Defendants.

OPINION and ORDER

24-cv-844-jdp

---

Plaintiff William N. Ledford, proceeding without counsel, is currently incarcerated at Dodge Correctional Institution. Ledford alleges that when he was at Columbia Correctional Institution, medical staff refused to properly treat severe infections that he developed. I granted Ledford leave to proceed on claims under the Eighth Amendment and under Wisconsin medical negligence law. Dkt. 8.

Defendants move for summary judgment. Dkt. 46. Ledford did not respond with a brief or supporting materials opposing defendants' motion for summary judgment, even after I granted him an extension of time to do so. Dkt. 52. Therefore, I will consider most of defendants' proposed findings of fact to be undisputed. *See* Prel. Pretrial Conf. Packet, attachment to Dkt. 22, at 8 ("If a party fails to respond to a fact proposed by the opposing party, the court will accept the opposing party's proposed fact as undisputed."). But because Ledford's complaint is a verified complaint stating under penalty of perjury that his allegations are true, Dkt. 1, I will consider that document as Ledford's declaration. *See Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996) (verified complaint can be admissible evidence at summary judgment if it otherwise satisfies the requirements for a declaration).

After considering the parties' materials, I will grant defendants' motion for summary judgment as it pertains to Ledford's federal-law Eighth Amendment claims because Ledford fails to show that defendants consciously disregarded his medical needs. I will relinquish the court's supplemental jurisdiction over his state-law claims.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff William Ledford was incarcerated at Columbia Correctional Institution (CCI) during the events relevant to this lawsuit. Defendant Laura Sukowaty, a physician, was an associate medical director for the state prison system. Defendant Alana Acker, a nurse, was the Health Services Unit manager at CCI.

Ledford suffers from a number of medical conditions, including type 1 diabetes, kidney disease and chronic obstructive pulmonary disease. On February 24, 2024, Ledford tested positive for Covid-19. Given his chronic illnesses making him more susceptible to serious illness with the virus, he was started on the antiviral Paxlovid. He was monitored daily with vital checks.

Ledford states that around February 27, 2024, his face became extremely swollen with fluid seeping. His eyes were almost completely swollen shut. He states that on February 28, he spoke with defendant Acker during his routine leg bandaging for another condition. Acker said that "per policy" Ledford's condition was "not serious enough" to justify outside care. Dkt. 1, ¶ 17.

Defendant Dr. Sukowaty saw Ledford on February 29, 2024. Ledford's condition (which she called a rash) was limited to his face. He reported that it was slightly itchy and

making his eyes swell shut. His vitals were within normal limits. Sukowaty noted blisters around his nose and swelling around his eyes but no redness of his eyes and no fever. Sukowaty diagnosed Ledford with dermatitis, likely from an allergic reaction. She ordered a corticosteroid cream used to reduce inflammation for seven days to treat the rash. Sukowaty also gave Ledford an antihistamine for the allergic reaction and ordered that he stop the COVID antiviral in case it was causing the allergic reaction. Sukowaty did not think that Ledford needed emergency treatment for the allergic reaction.

Several days later Ledford wrote a health service request stating that Sukowaty didn't send him to the hospital after seeing him for only about a minute. Acker responded, stating, "Dr. Sukowaty was on-site and did not feel outside care was necessary. Please continue to follow up with [the Health Services Unit]." Dkt. 49-1, at 156.

Early on March 5, 2024, a correctional officer found Ledford on the floor of his cell, "incoherent and nonresponsive." Dkt. 1, ¶ 35. Staff eventually sent Ledford to the emergency room because of his worsening facial rash, which was oozing. He was then sent to UW Hospital for more specialized care. He was admitted for four days and treated for sepsis possibly stemming from facial or right leg cellulitis. He also had an ear infection and oral thrush.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

I granted Ledford leave to proceed on claims under the Eighth Amendment and under Wisconsin medical negligence law against defendants Sukowaty and Acker for initially treating his facial condition with nothing but an over-the-counter cream and refusing to get him outside care.

## A. Eighth Amendment

I'll start with Ledford's Eighth Amendment claims. The Eighth Amendment prohibits prison officials from consciously disregarding prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

### 1. Defendant Sukowaty

Within a few days of contracting COVID-19, Ledford started experiencing severe facial swelling with seepage. Defendant Dr. Sukowaty briefly met with Ledford and did not send him to the hospital as he requested. Instead, she diagnosed him with dermatitis, likely from an allergic reaction. She prescribed him corticosteroid cream and an antihistamine and ordered that his COVID antiviral be stopped because she thought it might be the source of an allergic reaction.

It turns out that Ledford's problem was not an allergic reaction as diagnosed by Sukowaty—it was cellulitis, a bacterial infection. Ledford was sent to the hospital by other officials after his symptoms deteriorated further. As I explained in my order screening Ledford's complaint, prisoners aren't entitled to the treatment of their choice, and ordinarily a mistake in diagnosing or treating a medical problem doesn't state an Eighth Amendment claim, because negligence isn't enough to violate the Constitution. Dkt. 8, at 4. But I allowed Ledford to proceed with an Eighth Amendment claim because he alleged that he had an obviously serious medical problem, and that CCI medical staff, led by Sukowaty, has consciously chosen to limit treatments to inmates with diabetes under an "austerity program," with Sukowaty explicitly telling Ledford that she isn't concerned about lawsuits that result from that treatment.

The problem for Ledford at the summary judgment stage is that the record doesn't support a reasonable inference that Sukowaty intentionally gave him substandard care in this instance. Defendants deny that there is an "austerity program" for inmates with diabetes. Ledford is able to dispute this, at least in some sense. He doesn't show that such an official program exists, but he does say that at some point prior to the events of this case, Sukowaty worked to reduce or eliminate the use of diabetic snack bags, medical mattresses, other support items, and offsite specialist appointments for diabetic inmates, and that Sukowaty bragged about doing so and told inmates that she didn't care about lawsuits against her.

Nonetheless, Ledford doesn't show that Sukowaty's antipathy toward certain diabetes treatments has anything to do with the case at hand, about Sukowaty's treatment of his facial condition. To the contrary, the record shows that Sukowaty used her medical judgment in diagnosing Ledford with an allergic reaction from the COVID-19 antiviral—albeit making the wrong diagnosis—and treating him at CCI instead of sending him to the hospital. She noted

that his vitals were normal, he had itching and blisters, which she states are more common in an allergic reaction than with cellulitis. She also stopped short of prescribing him oral steroids because they were counterindicated given his diabetes. Nothing in the record indicates that Sukowaty's decision making was so far outside the scope of accepted medical judgment that a jury could infer that her decisions were not truly based in professional medical judgment. *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996). So I will grant summary judgment to defendants on this claim.

**2. Defendant Acker**

Ledford alleges that he interacted with Acker twice about his condition. Shortly after his symptoms began, while Acker performed routine leg bandaging for another ailment, he says that he asked Acker to be taken to the hospital, but she responded that his condition wasn't serious enough. Then, a few days after meeting with Sukowaty, Ledford wrote to Acker asking to be sent to the hospital, with Acker responding that Sukowaty had already determined that his condition wasn't serious enough for him to be sent to the hospital.

I take Acker to be saying that she did not have that first discussion with Ledford. Because Acker moves for summary judgment, I will assume that Ledford's version of events is true and that he did ask her to be taken to the hospital as she was performing routine bandaging of his leg. Even so, her failure to send him to the hospital or immediately provide other treatment doesn't indicate conscious disregard necessary to maintain an Eighth Amendment claim. Ledford was already being checked by other nurses daily for COVID-19 follow-ups and Ledford retained the ability to file formal requests for medical treatment. Ledford doesn't show that his symptoms at that early point were so acute that Acker needed to take immediate emergency action while attending to her routine duty of bandaging his leg. *Cf. Burks v. Raemisch*,

555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."). I will grant defendants' motion for summary judgment on this aspect of Ledford's Eighth Amendment claim against Acker.

As for Acker taking no action after Ledford wrote to her following his initial treatment by Sukowaty, Ledford fails to show that this indicates Acker's conscious disregard either. Acker wrote back that Sukowaty had seen him, did not think outside care was necessary, and that he should follow up with Health Services unit staff. This shows only that Acker deferred to Sukowaty's treatment decisions. As a nurse she didn't have the authority to countermand those decisions. In extreme circumstances, a nurse's deference to doctors' instructions "may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." *Berry*, 604 F.3d at 443. But the facts here couldn't lead a reasonable jury to conclude that that's what happened here. So I will grant defendants' motion for summary judgment on this aspect of Ledford's Eighth Amendment claim against Acker.

**B. Wisconsin-law medical negligence**

Ledford also brings Wisconsin-law medical negligence claims against defendants. The court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a), which permits a federal district court to hear a state-law claim if it is related to a federal claim in the same action. Ledford doesn't allege any other basis for federal jurisdiction over the state-law claims. Absent unusual circumstances, district courts will relinquish supplemental jurisdiction over state-law claims if all federal claims have been resolved before trial. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). Neither party identifies any unusual circumstances that would justify retaining jurisdiction over Ledford's state-law claims. I will decline to exercise subject matter jurisdiction over those claims.

Ledford may refile those claims in state court, subject to the applicable Wisconsin statute of limitations. Those limitations periods have been tolled while this case has been pending, but they will begin again 30 days from now. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 46, is GRANTED in part. Plaintiff's Eighth Amendment claims are DISMISSED.
2. Plaintiff's state-law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).
3. The clerk of court is directed to enter judgment accordingly and close the case.

Entered August 21, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge